<u>**SETTLEMENT AGREEMENT AND GENERAL RELEASE**</u>

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **Paymerang, LLC** (referred to throughout this Agreement as "Employer") and **Eric Waldenmaier** ("Employee"). The term "Party" or "Parties" as used herein shall refer to Employer, Employee, or both, as may be appropriate.

1. <u>**Recitals.**</u>

This Agreement is made with reference to the following facts:

(a) Employee was formerly employed by Employer;

(b) Employee's last day of employment with Employer was June 6, 2023 ("Separation Date");

(c) On or about July 21, 2023, Employee brought an action against Employer, which is pending as *Eric Waldenmaier, on behalf of himself and others similarly situated, v. Paymerang, LLC*, In the United States District Court for the Eastern District of Virginia (Richmond Division) Case No.: 3:23-cv-00466 (HEH) (the "Lawsuit"). In the Lawsuit, Employee asserts claims for failure to pay overtime wages under the Fair Labor Standards Act and Virginia Overtime Wage Act; and

(d) There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Employee and Employer have agreed, subject to the provisions in Paragraph 5 below, to resolve any and all claims, known and unknown, asserted and unasserted, which Employee has or may have against Employer and/or Employer's direct and indirect past, present, and future parent corporation, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") relating to Employee's employment with Employer, as of the date of execution of this Agreement.

2. <u>**Consideration/Indemnification for Tax Consequences and Liens.**</u>

(a) In consideration for Employee signing this Agreement, and complying with its terms and subject to the revocation language below, if any, Employer agrees to pay the total gross sum of SIXTY-FIVE THOUSAND AND NO/100 DOLLARS ($65,000) (the "Settlement Payment"), to be paid as follows:

(1) One payment for alleged unpaid wages by direct deposit (details to be provided separately) in the amount of NINETEEN THOUSAND FIVE HUNDRED AND

NO/100 DOLLARS ($19,500), less applicable payroll/tax withholdings, for which Employer shall issue an IRS Form W-2 to Employee.

(2)    One payment for alleged emotional distress, liquidated and/or other non-wage damages by direct deposit (details to be provided separately) in the amount of NINETEEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($19,500) with no deductions, for which Employer shall issue an IRS Form 1099 to Employee.

(3)    One payment for alleged Employee's attorneys' fees and costs, payable to "Butler Curwood, PLC" ("Employee's Counsel") by direct deposit (details to be provided separately) in the amount of TWENTY-SIX THOUSAND AND NO/100 DOLLARS ($26,000), with no deductions, for which an IRS Form 1099-MISC shall be issued to each of Employee and Employee's Counsel;

(b)    Employee agrees that Employee is responsible for all applicable employee taxes, if any, as a result of the receipt of these monies in Paragraph 2(a). Employee understands and agrees Employer is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors, and administrators (and Employee's legal representatives of every kind), agrees that in the event any federal, state, or local tax authority requires Employer to pay any sum in the nature of withholding taxes, unemployment taxes, or any other form of payroll tax or surcharge, or interest or penalties thereon, on account of the failure to treat any of the payments in Paragraphs 2(a)(2) or 2(a)(3) as W-2 wages, Employee shall reimburse Employer any such amounts paid out or payable by it, and shall indemnify and hold Releasees harmless for such amounts other than the Employer's portion of any such taxes (e.g., FICA) if the withholding on the original payments had been in accordance with the tax authority's determination.

(c)    Any settlement payments made by check set forth in this paragraph will be delivered to Employee's Counsel at 140 Virginia Street, Suite 302, Richmond, VA 23219.

## 3.    No Consideration Absent Execution of this Agreement.

Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Employee's timely execution of this Agreement and the fulfillment of the promises contained herein.

## 4.    Disbursal of Settlement Funds/Dismissal of Action.

(a)    The settlement payments described in Paragraph 2(a) will be sent within ten (10) business days after the latest of the following have occurred:

(1)    counsel for Employer receives a copy of the Agreement signed by Employee;

(2)    counsel for Employer receives an executed W-9 Form from Employee's Counsel;

(3)     counsel for Employer receives executed W-4 and W-9 Forms from Employee; and

(4)     the revocation period following the signing of this Agreement has expired.

(b)     The Parties authorize their respective counsel to file a Stipulation of Dismissal with prejudice within ten (10) business days of the execution of this Agreement.  The Parties agree that the Stipulation of Dismissal with prejudice will explicitly reserve jurisdiction to the United States District Court for the Eastern District of Virginia to enforce the terms of this Agreement.

## 5.     General Release, Claims Not Released and Related Provisions.

(a)     **General Release of All Claims**.     Employee and Employee's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims related to his employment with Employer, known and unknown, asserted or unasserted, which Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

Title VII of the Civil Rights Act of 1964;
Sections 1981 through 1988 of Title 42 of the United States Code;
The Employee Retirement Income Security Act of 1974 ("ERISA");
The Internal Revenue Code of 1986;
The Immigration Reform and Control Act;
The Americans with Disabilities Act of 1990;
The Worker Adjustment and Retraining Notification Act;
The Fair Credit Reporting Act;
The Family and Medical Leave Act;
The Equal Pay Act;
The Genetic Information Nondiscrimination Act of 2008;
The Age Discrimination in Employment Act of 1967 ("ADEA");
The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
Families First Coronavirus Response Act;
The Pregnant Worker's Fairness Act ("PWFA")
The Virginia Human Rights Act – Va. Code § 2.2-3900 et seq., any regulations thereunder, and any human rights law of any Virginia county or municipality;
Virginia Statutory Provisions Regarding Retaliation/Discrimination for Filing a Workers' Compensation Claim – Va. Code § 65.2-308(A) and (B);
The Virginia Equal Pay Act – Va. Code § 40.1-28.6;
The Virginians With Disabilities Act – Va. Code § 51.5-1 et seq.;
Virginia AIDS Testing Law – Va. Code Ann. §32.1-36.1;
Virginia Minimum Wage Laws – Va. Code § 40.1-28.8 et seq.;
Virginia Wage Payment and Hour Laws, including Virginia Overtime Wage Act – Va. Code § 40.1-29 et seq.;
Virginia Occupational Safety and Health (VOSH) Law – Va. Code § 40.1-49.3 et seq.;
Virginia Code § 8.01-40 regarding unauthorized use of name or picture of any person;
Virginia Code § 40.1-27 regarding preventing employment by others of former employee;

Virginia Code § 40.1-28.7:2 regarding protection of crime victims' employment;

Virginia Code § 18.2-465.1 regarding protection of court witnesses' and jurors' employment;

Va. Code 44-98, prohibiting interference with employment of members of Virginia National Guard, Virginia Defense Force, or naval militia;

Va. Code sections 18.2-499 and 500 (the Virginia statutory conspiracy statutes);

Va. Code § 8.01-413.1 (Personnel Records Law);

Virginia statutory provisions prohibiting discrimination against employees who serve as members of a local electoral board, assistant general registrars, and officers of election –Va. Code § 24.2-119.1;

Virginia statutory provisions prohibiting discharge based on single indebtedness – Va. Code § 34-29;

Virginia statutory provisions regarding leave for volunteer members of Civil Air Patrol – Va. Code § 40.1-28.6;

Virginia statutory provisions regarding prohibitions on an employer's requiring employees to disclose usernames or passwords for social media accounts – Va.

Code § 40.1-28.7:5;

Virginia statutory provisions regarding genetic testing or genetic characteristics – Va. Code § 40.1-28.7:1;

Va. Code § 40.1-28.01 regarding sexual assault-related nondisclosure agreements;

Va. Code § 40.1-28.7:7 and VA Code § 40.1-33.1 regarding independent contractor classification;

Va. Code § 40.1-28.7:8 regarding covenants not to compete for low wage workers;

Va. Code § 40.1-28.7:9 regarding pay transparency;

Va. Code § 40.1-27.3 regarding whistleblower protection;

Virginia statutory provisions regarding medicinal use of cannabis oil – Va. Code § 40.1-27.4;

Virginia statutory provisions regarding paid sick leave – Va. Code § 40.1-33.3 *et seq.*;

any other federal, state or local law, rule, regulation, or ordinance;

any public policy, contract, tort, or common law; or

any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(b) **Claims Not Released.** Employee is not waiving any rights Employee may have to: (i) Employee's own vested or accrued employee benefits under Employer's qualified retirement benefit plans as of the Separation Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(c) **Governmental Agencies.** Nothing in this Agreement or any other agreement you may have signed or company policy, prohibits, prevents, or otherwise limits Employee from (1) reporting possible violations of federal or other law or regulations to any governmental agency, regulatory body, or law enforcement authority (e.g., EEOC, NLRB, SEC, DOJ, CFTC, U.S. Congress, or an Inspector General), (2) filing a charge or complaint with any such governmental agency, or (3) participating, testifying, or assisting in any investigation, hearing, or other proceeding brought by, in conjunction with, or otherwise under the authority of any such governmental agency. To the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies related to any alleged adverse employment action(s),

except nothing in this Agreement prohibits, prevents, or otherwise limits Employee's ability or right to seek or receive any monetary award or bounty from any such governmental agency in connection with protected "whistleblower" activity. Employee is also not required to notify or obtain permission from Employer when filing a governmental whistleblower charge or complaint or engaging or participating in protected whistleblower activity.

6.      **Confidentiality.**

(a)      Employee confirms that prior to the execution of this Agreement, Employee has not revealed the substance or terms of the Agreement, or any underlying facts leading to this Agreement, to any third parties other than his attorneys and his spouse. Employee agrees not to disclose any such information, except to Employee's spouse, tax advisor, an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement and/or to any federal, state, or local governmental agency. Employer agrees not to disclose any such information other than as necessary for the effectuation of this Agreement to its Leadership Team, as comprised on the Effective Date of this Agreement, and Board of Directors. Employee agrees that in the event Employee discloses the terms of this Agreement to Employee's spouse, tax advisor, or attorney, Employee will, before disclosing any terms, direct them not to reveal, disseminate by publication of any sort, or release in any manner or means this Agreement (except as may be required by legal process) to any other person or to any member(s) of the public, or to any newspaper, magazine, radio station, television station or any future, current, or former employee, representative agent, customer, creditor, or competitor of Releasees without the express written consent of Releasees. If inquiries arise concerning this Agreement, Employee and Employer's Leadership Team, as comprised on the Effective Date of this Agreement, may only reply, "The matter has been resolved," and shall make no other comment, except as required by law. Employee and Employer acknowledge that confidentiality is a material term of this Agreement, and that if either party can prove in a court of law that the other party violated the confidentiality provision of this Agreement, the court shall order the non-prevailing party to pay the reasonable attorneys fees and costs incurred by the prevailing party in any litigation over this provision. Nothing in this Agreement has the purpose or effect of preventing Employee from making truthful disclosures about alleged unlawful conduct.

7.      **Acknowledgements and Affirmations.**

(a)      Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b)      Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Employee signs this Agreement and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee further affirms that Employee has submitted expense reports

for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(c)     Employee further affirms that Employee has no known workplace injuries or occupational diseases.

(d)     Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit against Employer for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(e)     Employee further affirms that Employee has not reported internally to Employer any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, and Employee has not been retaliated against for reporting or objecting to any such allegations internally to Employer.

(f)     Employee shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with Employer under any circumstances because of, among other things, irreconcilable differences with Employer, except that nothing in this paragraph shall require Employee's termination from any future employment in the event that his then-current employer acquires, is acquired by, or merges with Employer.

(g)     Employee affirms that all of Employer's decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

(h)     Employee and Employer acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

## 8.     <u>Return of Property.</u>

Except as provided otherwise in this Agreement or by law, Employee affirms that Employee has returned all of Employer's property, documents, and/or any confidential information in Employee's possession or control.

DocuSign Envelope ID: 0471CE7C-EFEC-454C-A436-7C775D1254BD

Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises and that Employer is not in possession of any of Employee's property.

9.    **Non-Disparagement.**

Employee agrees to refrain from making statements that are disparaging, demeaning or defamatory about Releasees, or Releasees' customers, suppliers, or vendors, including but not limited to communications on social media websites such as Facebook, Twitter, LinkedIn, or Glassdoor on blogs, by text or email or other electronic means. Employee also agrees that the consideration in this Agreement includes bargained for consideration in exchange for the promise of confidentiality and non-disparagement. This provision does not prohibit Employee from making truthful statements about the terms or conditions of Employee's employment, or from exercising Employee's rights under the National Labor Relations Act, government whistleblower programs, or whistleblowing statutes or regulations.

Employer agrees to direct its Leadership Team, as comprised on the Effective Date of this Agreement, to refrain from making statements that are disparaging, demeaning or defamatory about Employee, including but not limited to communications on social media websites such as Facebook, Twitter, LinkedIn, or Glassdoor, on blogs, by text or email or other electronic means.

10.    **Medicare Secondary Payer Rules.**

Employee affirms that as of the date Employee signs this Agreement, Employee is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests, as well as any insurance carrier providing benefits under Medicare Part C or Part D) determines that Medicare has an interest in the payment to Employee under this settlement, Employee agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Employee, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Employee is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

11.    **Governing Law and Interpretation.**

This Agreement shall be governed and conformed in accordance with the laws of Virginia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach before the United States District Court for the Eastern District of Virginia. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void,

DocuSign Envelope ID: 0471CE7C-EFEC-454C-A436-7C775D1254BD

leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Employee agrees to sign a replacement release in a form provided by Employer.

### 12.   **Nonadmission of Wrongdoing.**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

### 13.   **Amendment.**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

### 14.   **Entire Agreement.**

This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Employer and Employee, which shall remain in full force and effect according to their terms. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

### 15.   **Counterparts and Signatures.**

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

### 16.   **Mutual Negotiation.**

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

### 17.   **Third Party Beneficiaries.**

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Employee or any party acting on Employee's behalf.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING**

DocuSign Envelope ID: 0471CE7C-EFEC-454C-A436-7C775D1254BD

OF THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY EMPLOYEE'S COUNSEL BUTLER CURWOOD, PLC, AND SO DOING, ENTERS INTO THIS AGREEMENT.

EMPLOYEE MAY REVOKE THIS AGREEMENT AS TO AGE DISCRIMINATION CLAIMS ONLY FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH EMPLOYEE SIGNS OR ENTERS INTO THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO IBRAHIM MOIZ, GENERAL COUNSEL, IMOIZ@PAYMERANG.COM AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF THE PORTION OF THE AGREEMENT AND GENERAL RELEASE THAT RELATES TO ANY POTENTIAL AGE DISCRIMINATION CLAIMS." THE REVOCATION MUST BE RECEIVED BY IBRAHIM MOIZ, GENERAL COUNSEL, IMOIZ@PAYMERANG.COM OR HIS/HER DESIGNEE WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS OR ENTERS INTO THIS AGREEMENT. EMPLOYEE UNDERSTANDS AND AGREES THAT $1,000.00 OF THE FULL AMOUNT RECEIVED AS CONSIDERATION FOR THIS AGREEMENT AS SET FORTH ABOVE IS DEDICATED TO EMPLOYEE'S AGE DISCRIMINATION WAIVER AND EMPLOYEE IS NOT ENTITLED TO SUCH AMOUNT IF EMPLOYEE REVOKES THIS AGREEMENT AS TO AGE DISCRIMINATION CLAIMS. IN THE EVENT THAT EMPLOYEE REVOKES THIS AGREEMENT AS IT PERTAINS TO AGE DISCRIMINATION CLAIMS, EMPLOYEE AGREES THAT, IN LIEU OF THE TOTAL PAYMENT AMOUNT SET FORTH ABOVE, EMPLOYEE FORFEITS $1,000.00 OF THE FULL AMOUNT RECEIVED AS CONSIDERATION FOR THIS AGREEMENT. EMPLOYEE FURTHER UNDERSTANDS AND AGREES THAT EMPLOYEE'S REVOCATION OF THIS AGREEMENT AS IT PERTAINS TO CLAIMS OF AGE DISCRIMINATION SHALL HAVE NO EFFECT ON THE VALIDITY AND ENFORCEABILITY OF ANY OTHER TERM, CONDITION, OR PROVISION OF THIS AGREEMENT, INCLUDING THE RELEASE OF ALL CLAIMS NOT ARISING UNDER THE ADEA, WHICH TERMS BECOME EFFECTIVE WHEN THIS AGREEMENT IS ENTERED INTO OR SIGNED BY EMPLOYEE.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES RELATING TO EMPLOYEE'S EMPLOYMENT WITH EMPLOYER.

DocuSign Envelope ID: 0471CE7C-EFEC-454C-A436-7C775D1254BD

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**ERIC WALDENMAIER**                    **PAYMERANG, LLC**

By: _Eric Waldenmaier_                  By: _____
        4643F8876CE4428...                        Nasser Chanda
                                                  Chief Executive Officer

Print
Name: _Eric Waldenmaier_____        Date: _____

Date: _3/26/2024_____

DocuSign Envelope ID: B57817AC-E8B7-4D04-9022-1147DC0CF81C

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**ERIC WALDENMAIER**                    **PAYMERANG, LLC**

By:_____          By: *Nasser Chanda*
                                           _____
                                           Nasser Chanda
                                           Chief Executive Officer
Print
Name:_____          Date:_3/27/2024_____


Date:_____